Mr. Justice Thacher
delivered the opinion of the court.
A writ of mandamus was issued returnable to the circuit court of Hancock county, addressed to the defendant.in error, as clerk of the circuit and probate courts of that county, based upon his refusal to obey an order of the board of police of the county, commanding him to restore the books and papers belonging to his offices to the court house in Shieldsborough, from whence he had removed them to Gainesville, in said county, and to show cause why a peremptory mandamus should not issue. Upon the return of the writ, the questions made were raised by means of a demurrer filed to the answer of the defendant to the writ of mandamus, which demurrer was overruled by the circuit court.
The constitutionality of the act of 1846, ch. 145, entitled, “ An act to locate the seat of justice for the county of Hancock, and for other purposes,” is the only question presented to this court, as appears by an agreement of counsel, and we are also desired, in the event our conclusions are in favor of the constitutionality of the act, to .affirm the judgment of the circuit court.
The constitution, (art. 4, sec. 20,) gives to the boards of police “ full jurisdiction over roads, highways, ferries and bridges, and all other matters of county police.” The right of the boards of police to locate the seat of justice in each county, is claimed under its grant of jurisdiction in “ all matters of county police.”
The word “ police,” in law, is not a term of indefinite meaning, although it has several significations. It is administrative, under which its object is to maintain the order, comfort and convenience of the inhabitants of its administration; and it is judicial, under which it seeks to prevent crimes by punishing criminals. The judicial police punishes those offences which the administrative police has not been able to prevent by fit *244 regulations. Strictly speaking, therefore, the term police has relation to a power of organization of a system of regulations tending to the health, order, convenience and comfort of the inhabitants, and to the prevention and punishment of injuries and offences to the public. But it must be remembered, that the constitution has elsewhere specifically"confided to designated officers and tribunals, as to justices of the peace and the various courts of law, the prevention and punishment of offences against the public, and retained, as a part of the sovereignty of the state, the power to enact by the legislature such laws for the preservation of good order and good government, as it may, in its wisdom, deem suitable. It follows, therefore, that the term, as used in this connection in the constitution, conveys but little if any meaning, and in order to properly define it, legislation was necessary. Hence, it will be found, that the legislature has, from time to time, pointed out the extent of the authority so given, by confiding powers to the boards of police “in addition to their jurisdiction specifically vested in them by the constitution,” which specification is a jurisdiction over “roads, highways, ferries and bridges.” H. & H. 445, sec. 3, and passim in the laws relating to the board of police. The grant of general jurisdiction in matters of police to become operative, required legislation to designate its subject-matter. The conclusion necessarily is, that as the power to locate the seats of justice of the several counties, has not been confided to the boards of police by the legislature, the power still remains in that branch of the government.
It is next in order of inquiry, whether the above mentioned act of the legislature of 1846, ch. 145, locating the seat of justice of Hancock county at Gainesville, constituted a location absolutely, or only upon condition. The first and seventh sections of that act, we think, put it beyond doubt, that the location was thereby made absolute, and to take effect, at all events, ten days after the expiration of the spring term of the circuit court of that county, to be holden for the year 1846. These sections are as follows :
“ 1st. That the seat of justice for the county of Hancock, be, *245 and the same is hereby made permanent, and located in the town of Gainesville, in said county.”
“7th. That should it so happen that the public buildings above spoken of should not be completed by the spring term of the circuit court of 1846, that the several courts of said county shall be held at the usual place of holding the, same up to that time. Then all the officers above spoken of shall, within ten days thereafter, remove their books and papers to the town of Gainesville, to such buildings as the citizens shall have provided for their accommodation, until the completion of the public buildings above spoken of.”
The other sections of the act contain the provisions that the citizens of Gainesville shall erect, at their own expense, upon the land donated for that purpose by Charles EL Frazier, suitable brick buildings for the accommodation of the several courts of the county; that certain persons named in the act shall, as a board of commissioners, report the cost of the buildings to the county treasurer, who shall be authorized to refund to these citizens one-third of the cost of their construction ; and that a neglect by any of the officers mentioned in the act, to comply with its requisitions, shall be deemed a misdemeanor in office. These provisions contain no conditions controlling the absolute location of the seat of justice at Gainesville. They simply show, whatever the fact may be, that the legislature must have made the location of the county seat upon the presumption, and in anticipation of an undertaking by the citizens of Gainesville, to erect, at their own expense, the necessary public buildings of brick, and that they provided that those citizens should after-wards be refunded one-third of the actual cost of the buildings. The act makes no conditions, but renders it imperative upon the officers to remove their books and papers after a certain period, under the pains and penalties affixed by law to a misdemeanor in office. As to the undertaking, real or supposed, of the citizens of Gainesville, we have nothing to do, only so far as it may put a condition upon the act in question, which, as we have said, it does not. If no provision shall have been made at that period for the offices, and the legislature having *246 permanently located the seat of justice at Gainesville, the laws elsewhere provide for such an emergency. How. & Hutch. 466, sec. 82.
Lastly; previous acts of the legislature are relied upon as having fixed, beyond the power of change, the seat of justice of the county. Acts of 1842, ch. 60, and 1843, ch. 13. Upon this point, it suffices to say, that the present act is as fully authorized as previous acts, and upon the same principles, and that the subject is at all times at the control of legislative action and discretion.
In consequence, with the foregoing opinion, and in accordance with the agreement of counsel, we direct the judgment of the circuit court to be affirmed.